IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| MELANIYA BORIS HUFF, | * | Chapter 7 |
|     Debtor | * | |
| | * | Case No.: 1-04-bk-06968MDF |
| RONALD MARX, | * | |
|     Objectant | * | |
| | * | |
| v. | * | |
| | * | |
| MELANIYA BORIS HUFF, | * | |
|     Respondent | * | |

## OPINION

### Procedural History

Before the Court is the question of whether a claim based upon a state court order awarding attorney's fees to a parent in a child custody dispute is excepted from discharge in the other parent's Chapter 7 case. Ronald Marx ("Marx") filed a *pro se* objection to confirmation of the Chapter 13 plan of Melaniya Boris Huff ("Debtor"). Debtor's plan did not provide for the payment of Marx's secured claim for attorney's fees awarded by the Superior Court of New Jersey, Middlesex County. A hearing on the objection to confirmation was held on June 28, 2005. At the hearing, Marx argued that his debt was nondischargeable under 11 U.S.C. §523(a)(5).[1] The parties agreed to argue the discharge issue in the context of the confirmation

---

[1] On April 20, 2005, the President signed into law the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), P.L. 109-8, §256, 119 Stat. 23, 11 U.S.C. §101 *et seq*. The BAPCPA substantially revised a number of provisions of the Bankruptcy Code, including the provision at issue in this case, 11 U.S.C. §523(a)(5). Most of the provisions of the BAPCPA, including the revised Section 523(a)(5), did not become effective until October 17, 2005. As the instant bankruptcy case was filed prior to the effective date of the BAPCPA, the instant decision is to be made under the terms of the Bankruptcy Code.

hearing, although Marx had not commenced an adversary proceeding.[2] After the hearing, the Court issued an order overruling the objection to the plan, but took under advisement the issue of whether Marx's debt was dischargeable.

By order entered on July 7, 2005, the plan was confirmed. Thereafter, Debtor filed an objection to Marx's claim and a motion to avoid the judicial lien. Marx responded by filing an answer to the motion to avoid the lien and a cross motion for relief from the automatic stay. This opinion addresses the dischargeability of Marx's claim and his request for relief from the automatic stay as well as Debtor's objection to Marx's claim and motion to avoid the judicial lien.[3]

### Factual Findings

Debtor and Marx are the parents of a minor child who was the subject of the custody proceeding in New Jersey. The state court action apparently was initiated by Debtor, as she is listed as the Plaintiff in the June 22, 2001 order of the New Jersey Superior Court that granted joint custody to the parties (the "Custody Order"). Marx was awarded "primary residential custody" of the child, but the Custody Order contains no provision regarding the payment of support by either parent to the other. The Custody Order does state that "[Marx] shall notify [Debtor] and counsel within 7 days of the date he obtains employment. Child support shall be

---

[2]Pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure, matters of nondischargeability are required to be brought before the Court through the procedural device of an adversary complaint. That requirement was waived by the Court in this case because Marx was appearing *pro se*.

[3]I have jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(L). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052.

2

reviewed at that time." In a separate proceeding in January 2002, Marx was granted sole custody of the parties' child, and in October 2002 Debtor was ordered to pay Marx forty-six dollars ($46.00) per week in child support.

Marx's participation in the custody proceeding required him to incur attorney's fees of approximately $23,000.00. Debtor was represented by *pro bono* counsel, thus she did not incur attorney's fees. Under its rules, the New Jersey Superior Court notified the parties that it would accept motions for the payment of fees.[4] Because only Marx incurred fees, only he submitted a motion to the court. On November 27, 2001, the New Jersey Superior Court issued an order (the "Fee Order") directing Debtor to pay Marx's attorney's fees in the amount of $8,467.00. Marx recorded the Fee Order as a lien on December 27, 2001. Although Marx pursued collection, none of the fees have been paid. On November 20, 2004, Debtor filed the instant bankruptcy petition.

---

[4]New Jersey Court Rule 5:3-5(c) provides for a family court to order a party to pay attorney's fees of an opposing party, as follows:

> (c) Award of Attorney Fees. Subject to the provisions of R. 4:42-9(b), (c), and (d), the court in its discretion may make an allowance, both pendente lite and on final determination, to be paid by any party to the action . . . on any claim for . . . support, . . . custody, parenting time, . . . and claims relating to family type matters in actions between unmarried persons. . . . In determining the amount of the fee award, the court should consider . . . the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained: (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

## Discussion

Marx asserts that his claim for attorney's fees is in the nature of support and may not be discharged pursuant to 11 U.S.C. § 523(a)(5).[5] Debtor argues that the claim is for fees incurred in the custody litigation, but is not a claim in the nature of support.

A creditor in an action under Section 523(a)(5) bears the burden of establishing nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991). All exceptions to discharge are to be interpreted narrowly in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *In re Wise*, 281 B.R. 248, 251 (Bankr. M.D. Pa. 2002). While there is "a tension" between the presumption of dischargeability and the purpose of excepting from discharge debts for support of a child or of a former spouse, "the Court must remember to interpret exceptions to discharge, including this one, narrowly." *County of Oakland v. Fralick,* 215 B.R. 132, 134 (W.D. Mich.1997) (citing *In re Chang,* 210 B.R. 578, 581 (9th Cir. BAP 1997), *rev'd* 163 F.3d 1138 (9th Cir 1998)). While Section 523(a)(5) has been applied to a narrow field of cases, the word "support," as it is used in Section 523(a)(5), has been given a broad definition by the courts. *In re Akamine*, 217 B.R. 104 (S.D. N.Y. 1998) (term "support" in §523(a)(5) is to be broadly construed) (citing *In re Peters*,

---

[5]In pertinent part, 11 U.S.C. §523(a)(5) provides as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –
> (5) to a spouse, former spouse, or child of the debtor, for . . . support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record. . . .

11 U.S.C. §523(a)(5).

4

133 B.R. 291 (S.D. N.Y. 1991). Overarching the somewhat fine distinction between narrowly interpreting a statutory provision, but broadly interpreting a key word within it, is the U.S. Supreme Court's directive that "when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004).

The facts of the instant case are not typical because they involve a custody matter independent of a divorce or support proceeding. The plain meaning of "support of a child" in Section 523(a)(5) suggests a payment of money directly to a child's parent for the specific purpose of meeting the child's basic needs. However, the funds at issue were to be paid as reimbursement for the parent's costs, not for expenses directly related to the care of the child. They are labeled as attorney's fees, not as support. They were incurred in connection with a custody dispute, not as an element of a separation agreement or divorce decree. Thus, the issue before me is whether a court order directing the payment of attorney's fees incurred by one parent in a child custody proceeding can be regarded as an order in the nature of support for the child.

Several courts have addressed this narrow issue. Marx cites *In re Maddigan*, 312 F.3d 589 (2nd Cir. 2002), in which attorneys who had represented an unmarried mother in a custody case against the father of the child asserted that their fees for services were nondischargeable under Section 523(a)(5) in the father's bankruptcy case. *Maddigan* held that the debt resulting from the proceeding was one "to a child . . . for support of such child . . . in connection with an order of a court of record" under Section 523(a)(5), although the proceeding was limited to the issue of custody. The court thought it "insignificant " that the proceeding in which the services

5

were rendered did not encompass support payments for the child. *Id.* 312 F.3d at 595.[6] In *Maddigan,* the court relied on a decision of the District Court for the Southern District of New York, *In re Akamine*, *supra*, which stated that "the vast majority of courts have held that awards of fees inextricably intertwined with proceedings affecting the welfare of a child, such as custody *or* child support litigation, are deemed 'support' within the meaning of §523(a)(5)." *Maddigan*, 312 F.3d at 595-96 (italics in the original) (citing *Akamine*, 217 B.R. at 108).

The *Akamine* court overstates the degree of harmony among the courts who have addressed the instant issue. In *In re Jones*, 9 F.3d 878 (10th Cir. 1993), the Tenth Circuit noted that "[t]he circuits have split on the issue of whether a post-divorce child custody action is properly considered to be in the nature of support." *Id* at 881. (citing, *In re Dvorak,* 986 F.2d 940 (5th Cir. 1993) (best interests of child are ultimate focus of custody proceeding and therefore the proceeding is "support" related); *accord In re Peters,* 964 F.2d 166 (2nd Cir. 1992); *In re Chang*, 163 F.3d 1138 (9th Cir. 1998); *contra Adams v. Zentz*, 963 F.3d 197 (8th Cir. 1992) (award of court pursuant to custody proceeding is only support-related if support was the actual function that the state court intended for the award to serve). *See also In re Weisberg*, 218 B.R. 740 (Bankr. E.D. Pa. 1998) (noting continuing disagreement regarding whether "custody issues are inherently-support related."); *In re Weinstein,* 173 B.R. 258 (Bankr. E.D. N.Y. 1994) (discussing three "prevailing doctrines" regarding whether a debtor may discharge an obligation for court-awarded attorney's fees.) The Third Circuit Court of Appeals, whose decisions are binding on this Court, has not specifically addressed this issue.

---

[6]The *Maddigan* court also found that the award could be considered to be one "to [the] child" even though it was in fact payable directly to the mother's law firm and not to the child or to the mother. *Id.* 312 F.3d at 594.

I am persuaded that attorney fee awards arising from services rendered in custody cases are, in the absence of unusual circumstances, in the nature of support. *See Jones*, 9 F.3d at 882. Section "523(a)(5) should be read as using the term "support" in a realistic manner; the term should not be read so narrowly as to exclude everything bearing on the welfare of the child but the bare paying of bills on the child's behalf." Id. at 881 (quoting *Holtz v. Poe (In re Poe)*, 118 B.R. 809, 812 (Bankr. N.D. Okla. 1990)). I also agree with the Tenth Circuit's observation in *Jones* that "[g]enerally, custody actions are directed towards determining which party can provide the best home for the child and are, therefore, held for the child's benefit and support . . . . Consequently, court-ordered attorney's fees arising from . . . custody actions are deemed in the nature of support under § 523(a)(5) as being incurred on behalf of the child." *Id.* at 882.

The Tenth Circuit further refined the test for dischargeability of attorney's fees related to a custody proceeding in *In re Lowther*, 321 F.3d 946 (10th Cir. 2002). In *Lowther*, the Debtor was the custodial parent and was receiving child support payments from the creditor parent. The Tenth Circuit held that the purpose of the child support award would be frustrated if the custodial parent were required to return the payments to the creditor parent as reimbursement of attorney's fees. *Id.* at 949. Therefore, the *Lowther* court determined that these unusual circumstances justified the discharge of the fees that otherwise would have been considered as support and nondischargeable.

The application of the analysis used by the Tenth Circuit in *Lowther* is instructive in this case. The record indicates that both parties were relatively impecunious when the Fee Order was entered; in fact, neither had a full time job at the time. Accordingly, both Debtor and Marx had to stretch their budgets to provide support for their child, and the entry of a child support order

7

was delayed. The New Jersey court awarded joint custody to the parties, but gave "primary residential custody" to Marx. It is undisputed that Marx incurred substantial attorney's fees in the custody litigation, while Debtor incurred none. Thus, the award had the effect of equalizing the burden of these fees between the parents.[7] I find nothing unusual in these facts.

Additionally, I am persuaded not to depart from the general rule by the perfunctory nature of the Fee Order. It consists of a single paragraph based on the Court's consideration of "the pleadings and argument of counsel." No particular purpose for the award or schedule of payment is stated. The brevity of the order indicates that it was issued purely as a consequence of New Jersey Court Rule 5:3-5(c). The Rule mandates that the court consider the respective financial circumstances of the parties and their ability to pay their own fees or contribute to the payment of the fees of the opposing party. As the majority of courts have held, these circumstances ultimately bear on the financial support of the child and, therefore, are "support-related."

Debtor acknowledges the applicability of the majority position as stated in *Maddigan* to her case, although she distinguishes that case from hers. She points out that in *Maddigan* the custody court's order specifically stated that the attorney fees were being awarded for purposes of enabling the spouse receiving the award to support the child. Debtor indicates that the instant custody court order is not so specific and argues that without this specificity, Marx cannot carry his burden of proving nondischargeability. Under the Tenth Circuit approach as set forth in *Jones* and *Lowther,* however, a custody order need not state the purpose of the fee award. It is

---

[7]Although the record does not contain the actual fee application submitted by Marx's counsel, Marx indicates that his legal bills exceeded $23,000.00 and that the state court awarded only a part of this total to him – the $8,467.00 now at issue.

presumed that the fee award is for the support of the child absent unusual circumstances.

Accordingly, I conclude that the Fee Order entered in connection with the custody proceeding is in the nature of support under § 523(a)(5) and was incurred on behalf of the parties' child. Therefore, an order will be entered granting judgment in favor of Marx on the issue of the nondischargeability of the debt in the amount of $8,467.00. Having determined that the obligation owed by Debtor to Marx is in the nature of support, I find that the judicial lien may not be avoided pursuant to 11 U.S.C. § 522(f)(1)(A). *See In re Jarski*, 301 B.R. 342, 347 (Bankr. D. Ariz. 2003). As to Marx's motion for relief from the automatic stay, at this point I decline to grant the relief in order to allow Debtor an opportunity to amend her plan to provide for Marx's claim.

An appropriate order will be entered.

BY THE COURT,

*Mary D. France*
Bankruptcy Judge

Date: December 9, 2005

*This electronic order is signed and filed on the same date.*

9